UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES MERRITT, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br>　vs.<br><br>MOLECULAR PARTNERS AG, PATRICK AMSTUTZ, ANDREAS EMMENEGGER, WILLIAM M. BURNS, AGNETE FREDRIKSEN, STEVEN H. HOLTZMAN, SANDIP KAPADIA, VITO J. PALOMBELLA, MICHAEL VASCONCELLES, and DOMINK HÖCHLI,<br><br>　　　　　Defendants. | Case No. 1:22-cv-05925-ER<br><br>JURY TRIAL DEMANDED |

# AMENDED CLASS ACTION COMPLAINT

Lead Plaintiff James Merritt ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys that included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Molecular Partners AG ("Molecular Partners" or "Company"), analysts' reports and advisories about Molecular Partners, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class ("Class") consisting of all persons other than defendants who purchased or otherwise acquired Molecular Partners American Depositary Shares ("ADSs") pursuant and/or traceable to the "Registration Statement on Form F-1" filed with the Securities and Exchange Commission ("SEC") on June 14, 2021 with and effective date of June 16, 2021 ("Registration Statement") issued in connection with the Company's initial public offering conducted on or about June 16, 2021 (the "IPO"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 ("Securities Act"). Each of the Individual Defendants (defined below) signed the Registration Statement that Defendants used to sell Molecular Partners ADSs to investors in the IPO.

2. The Registration Statement contained untrue statements of material facts and/or omitted to state material facts that Defendants were duty-bound to disclose to make the statements therein not misleading.

3. Leveraging in material part the Company's collaboration with Amgen Inc. ("Amgen") on MP0310, an oncology product candidate for the potential treatment of fibroblast activation protein ("FAP") positive cancers and the Company's lead oncology product candidate, Defendants sold three million ADSs in the IPO, raising over $59 million before expenses.

4. The Registration Statement materially misled investors about the strength of Amgen's commitment to the collaboration with Molecular Partners. With three of four DARPin base technology patents that the Company licensed from the University of Zurich about to expire in September 2021, the Registration Statement omitted that a competitor to Amgen was already well into clinical trials for its own drug candidates to treat FAP positive tumors. Indeed, that competitor began enrolling patients in trials for two more such drug candidates shortly before the

IPO. Each of these three trials was larger and further along than Molecular Partners' Phase 1 clinical trial of MP0310. The Registration Statement did not disclose that this increasing competition materially impacted Amgen's strategy concerning drug candidates for FAP positive tumors, devaluing MP0310 to Amgen and undermining Amgen's partnership with Molecular Partners.

5. On April 26, 2022, Molecular Partners disclosed that Amgen had notified of its intention to terminate its partnership with the Company. The misrepresentations in and omissions from the Registration Statement violated Sections 11 and 15 of the Securities Act, damaging Plaintiff and the members of the Class.

## JURISDICTION AND VENUE

6. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l and 77o).

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v).

8. Venue is proper in this Judicial District pursuant to 15 U.S.C. § 77v. Molecular Partners ADSs are traded on NASDAQ, located within this Judicial District.

9. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

10. Plaintiff purchased or otherwise acquired Molecular Partners ADSs pursuant and/or traceable to the Registration Statement and Prospectus issued in connection with the

Company's IPO on June 16, 2021, as listed in his certification (Dkt. No. 9-2), incorporated herein by reference.

11. Defendant Molecular Partners is organized under the laws of Switzerland with principal executive offices located at Wagistrasse 14, 8952 Zürich-Schlieren, Switzerland. The Company's ADSs trade in an efficient market on the NASDAQ under the trading symbol "MOLN."

12. Defendant Patrick Amstutz ("Amstutz") is, and was at the time of the IPO, Molecular Partners' CEO and a Director of the Company. Amstutz signed or authorized the signing of the Registration Statement filed with the SEC.

13. Defendant Andreas Emmenegger ("Emmenegger") is, and was at the time of the IPO, Molecular Partners' CFO. Emmenegger signed or authorized the signing of the Registration Statement filed with the SEC.

14. Defendant William M. Burns ("Burns") is, and was at the time of the IPO, the Chairman of the Board of Directors ("Board") of Molecular Partners. Burns signed or authorized the signing of the Registration Statement filed with the SEC.

15. Defendant Agnete Fredriksen ("Fredriksen") is, and was at the time of the IPO, a Director of the Company. Fredriksen signed or authorized the signing of the Registration Statement filed with the SEC.

16. Defendant Steven H. Holtzman ("Holtzman") is, and was at the time of the IPO, a Director of the Company. Holtzman signed or authorized the signing of the Registration Statement filed with the SEC.

17. Defendant Sandip Kapadia ("Kapadia") is, and was at the time of the IPO, a Director of the Company. Kapadia signed or authorized the signing of the Registration Statement

filed with the SEC.

18.     Defendant Vito J. Palombella ("Palombella") is, and was at the time of the IPO, a Director of the Company. Palombella signed or authorized the signing of the Registration Statement filed with the SEC.

19.     Defendant Michael Vasconcelles ("Vasconcelles") is, and was at the time of the IPO, a Director of the Company. Vasconcelles signed or authorized the signing of the Registration Statement filed with the SEC.

20.     Defendant Domink Höchli ("Höchli") is, and was at the time of the IPO, a Director of the Company. Höchli signed or authorized the signing of the Registration Statement filed with the SEC.

21.     Defendants Amstutz, Emmenegger, Burns, Fredriksen, Holtzman, Kapadia, Palombella, Vasconcelles, and Höchli are referred to herein as the "Individual Defendants."

22.     The Individual Defendants possessed the power and authority to control the contents of Molecular Partners' SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Molecular Partners, and their access to material information available to them but not to the public, the Individual Defendants knew or should have known that the value of Amgen's collaboration with Molecular Partners to Amgen had diminished, materially increasing the likelihood of its termination.

23.     Molecular Partners and the Individual Defendants are referred to herein collectively as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

*Background*

24.     Molecular Partners is a clinical-stage biopharmaceutical company, focusing on the discovery, development, and commercialization of therapeutic proteins. Molecular Partners uses a DARPin (an acronym for designed ankyrin repeat protein) platform to build product candidates with multiple mechanisms of action to address biological problems, which might offer an advantage over therapies that target a single disease pathway. It has not yet brought any products to market.

25.     On April 22, 2021, Molecular Partners filed the Registration Statement on Form F-1 with the SEC in connection with the IPO. The Company amended the Registration Statement several times, most recently on Form F-1/A on June 14, 2021. That version of the Registration Statement was declared effective by the SEC on June 15, 2021.

26.     Leading up to its IPO, the Company repeatedly touted the clinical and commercial prospects of certain of its product candidates under development in collaboration with other companies.

27.     In particular, at the time of the IPO and in partnership with Amgen, Molecular Partners was developing MP0310 (AMG 506) for the treatment of certain types of cancer. The Company was carrying out a Phase 1 clinical trial for MP0310 at the time of the IPO. The Registration Statement states:

> We are developing AMG 506 (MP0310), the lead product candidate in our oncology program and which is partnered with Amgen, as a tumor-localized, 4-1BB immune-cell activator for the potential treatment of FAP-positive cancers, which include multiple solid tumors. To avoid potential toxicity concerns, and allow for potentially therapeutically meaningful activation of 4-1BB, we engineered AMG 506 (MP0310) to activate 4-1BB only when bound to FAP. FAP is found in the tumor stroma in high density, and its binding can create a local cluster effect. In our Phase 1 clinical trial, we observed that AMG 506 (MP0310)

demonstrated the ability to generate localized immune cell activation with no systemic toxicity in interim data. The dose escalation stage of the Phase 1 clinical trial was initiated in late 2019 and we are currently conducting dosing regimen adaptations to identify the dosing regimen to obtain sustained 4-1BB activation. We believe AMG 506 (MP0310) could be particularly relevant as a combination agent with potential combination studies in collaboration with Amgen.

28.     Describing the Company's strategy, the Registration Statement explained that the development of MP0310, its lead oncology product candidate, was a "key aspect[]":

**Advance clinical development of AMG 506 (MP0310) and MP0317, the most advanced product candidates in our oncology program.** Utilizing our knowledge of DARPin designs, we have developed a method of locally clustering potent immunostimulatory molecules, which are designed to activate themselves only in the presence of specific conditions. Our lead oncology product candidate, AMG 506 (MP0310), is being developed to locally activate immune cells in the tumor by binding to FAP on tumor stromal cells where it acts as a localizer, and co-stimulating T cells via 4-1BB, an immune modulator protein, for the treatment of FAP-positive cancers. We expect to commence a Phase 1 clinical trial for MP0317 (FAP x CD40) in the second half of 2021.

29.     On December 18, 2018, Molecular Partners entered into a Licensing and Collaboration Agreement with Amgen ("Amgen Agreement") for the clinical development and commercialization of MP0310/AMG 506. Under the terms of the Amgen Agreement, Molecular Partners granted to Amgen an exclusive worldwide, royalty-bearing, sublicensable license under the Company's patents and know-how relating to MP0310 / AMG506 to develop and commercialize the potential product. Molecular Partners and Amgen agreed to jointly evaluate MP0310 / AMG 506 in combination with Amgen's oncology pipeline products, including its investigational bispecific T-cell engager, or TCE, or BiTE, molecules. Molecular Partners retained certain rights to develop and commercialize its proprietary DARPin pipeline products in combination with MP0310 / AMG 506.

30.     Under the Amgen Agreement, Molecular Partners received a nonrefundable upfront payment of $50 million, and became eligible to receive up to $497 million in development, regulatory, and commercial milestone payments, as well as double-digit, tiered royalties up to the

7

high teens. Molecular Partners had the lead role in performing certain clinical development, manufacturing and regulatory activities in the first clinical phase and the Company assigned the full $50 million upfront as the transaction price to this performance obligation, based on its development plan for MP0310 and the contractual agreement. In other words, Amgen's $50 million payment was funding the Company's development of MP0310. In the Registration Statement, Molecular Partners disclosed that all of its revenue recognized in 2020 and 2019 was the result of the Amgen Agreement.

31.     Discussing the use of anticipated proceeds from the IPO, the Registration Statement includes:

> We currently intend to use the net proceeds from this offering, together with our existing cash and cash equivalents, to fund our planned Phase 1 clinical trial of MP0317, to advance the expansion of our research and development activities in our infectious disease program, which is expected to include the selection of an additional product candidate targeting infectious disease and the preclinical research and initiation of IND-enabling studies with respect to this product candidate, to advance our liquid tumor portfolio initially in acute myeloid leukemia through Phase 1 clinical development, and leveraging our CD3 platform to develop additional product candidates thereafter, to advance our platform and other potential product candidates and for working capital and other general corporate purposes.

32.     Later in the Registration Statement, the Company stated:

> We currently expect to use the net proceeds from this offering, together with our existing cash and cash equivalents, as follows:
>
> •       approximately $25 (CHF 22) million to fund our planned Phase 1 clinical trial for MP0317, the second product candidate in our oncology program, to completion;
>
> •       approximately $40 (CHF 36) million towards the expansion of our research and development activities in our infectious disease program, which is expected to include the selection of an additional product candidate targeting infectious disease and the preclinical research and initiation of IND-enabling studies with respect to this product candidate;

- approximately $43 (CHF 39) million to advance our liquid tumor portfolio initially in acute myeloid leukemia, or AML, through Phase 1 clinical development, and leveraging our CD3 platform to develop additional product candidates thereafter; and

the remainder to fund the advancement of our platform and other potential product candidates, working capital and other general corporate purposes.

33. In other words, the Company told investors that the IPO proceeds would fund the development of its product candidates *besides* MP0310, while Amgen's upfront payment and anticipated future milestone payments would fund the development of MP0310. In the event of the termination of its collaboration with Amgen, to continue development of the Company's lead product candidate, Molecular Partners would have to divert funds to developing MP0310, diluting the resources the Company intended to commit to other products.

34. On June 16, 2021, Molecular Partners filed a prospectus on Form 424B4 with the SEC in connection with the IPO ("Prospectus"), which incorporated and formed part of the Registration Statement.

35. Pursuant to the Registration Statement and Prospectus, Molecular Partners conducted the IPO, issuing three million ADSs at $21.25 per ADS, for proceeds to the Company of over $59 million before expenses.

*Materially False and Misleading Statements in the Registration Statement*

36. The Registration Statement touted the potential of the Company's collaboration with Amgen for MP0310, stating, in relevant part, that "[w]e believe our partnership with Amgen allows for a meaningful investigation of combination therapies, given Amgen's expertise in the field of oncology"; that "[w]e expect that the ongoing Phase 1 clinical trial of AMG 506 (MP0310), should it demonstrate sustained activity of 4-1BB, will produce data in 2021 to inform potential combination studies which would be conducted by Amgen assets"; and that "[w]e believe AMG

9

506 (MP0310) could be particularly relevant as a combination agent with potential combination studies in collaboration with Amgen."

37. These statements were materially false and misleading because the Registration Statement omitted that the value of the Amgen Agreement to Amgen had changed, materially increasing the likelihood of its termination of the Amgen Agreement. In April 2021, the same month that Molecular Partners first filed the Registration Statement and only two months before the IPO, Amgen's competitor, F. Hoffman-La Roche AG ("Roche"), began enrolling patients in trials for two of its own drug candidates for the treatment of FAP-positive solid tumors, which were each further along and larger than the trial of MP0310. Roche had a trial for a third such candidate already in progress. Additionally, three of four DARPin base technology patents that the Company licensed from the University of Zurich were about to expire in September 2021. By touting the potential of the development plan for MP0310 with Amgen without disclosing that the market for this kind of drug had materially changed since Molecular Partners had entered into the Amgen Agreement, Defendants omitted material information to investors.

38. The Registration Statement stated:

Under the Amgen Agreement, we and Amgen will jointly evaluate MP0310 / AMG 506 in combination with Amgen's oncology pipeline products, including its investigational BiTE molecules. In accordance with a mutually agreed development plan, we will conduct the Phase 1a clinical trials and Amgen will be responsible for all subsequent development of MP0310 / AMG 506 after completion of the Phase 1a clinical trials. We and Amgen have established a joint steering committee to oversee the research, information sharing, and potential amendments of the research plan. Each party is responsible for development costs incurred by it until the beginning of Phase 2 clinical trial, after which point the parties will each contribute a fixed percentage of the development costs on the first three indications. Amgen is required to use commercially reasonable efforts to develop MP0310 / AMG 506 in combination with at least one of Amgen's oncology pipeline products in certain major markets.

39. This statement was materially false and misleading because the Registration Statement omitted that the value of the Amgen Agreement to Amgen had changed, materially

increasing the likelihood of its termination of the Amgen Agreement. In April 2021, the same month that Molecular Partners first filed the Registration Statement and only two months before the IPO, Amgen's competitor, Roche, began enrolling patients in trials for two of its own drug candidates for the treatment of FAP-positive solid tumors, which were each further along and larger than the trial of MP0310. Roche had a trial for a third such candidate already in progress. Additionally, three of four DARPin base technology patents that the Company licensed from the University of Zurich were about to expire in September 2021. By touting the potential of the development plan for MP0310 with Amgen without disclosing that the market for this kind of drug had materially changed since Molecular Partners had entered into the Amgen Agreement, Defendants omitted material information to investors.

40. With respect to the potential termination of Molecular Partners' collaboration agreement with Amgen, the Registration Statement stated, in relevant part:

> The Amgen Agreement expires on a country-by-country basis upon the expiration of Amgen's payment obligations in such country. Amgen may terminate the Amgen Agreement in its entirety for convenience following a certain notice period. Either party may terminate the Amgen Agreement upon an uncured material breach of the agreement or insolvency of the other party following a certain notice period. Following any termination, we have certain rights to receive a license to certain intellectual property generated by Amgen under the Amgen Agreement for purposes of continued development and commercialization of MP0310 / AMG 506.

41. This statement was materially false and misleading because the Registration Statement omitted that the value of the Amgen Agreement to Amgen had changed, materially increasing the likelihood of its termination of the Amgen Agreement. In April 2021, the same month that Molecular Partners first filed the Registration Statement and only two months before the IPO, Amgen's competitor, Roche, began enrolling patients in trials for two of its own drug candidates for the treatment of FAP-positive solid tumors, which were each further along and larger than the trial of MP0310. Roche had a trial for a third such candidate already in progress.

11

Additionally, three of four DARPin base technology patents that the Company licensed from the University of Zurich were about to expire in September 2021. By describing the terms of a potential termination of the Amgen Agreement without disclosing that the market for a drug like MP0310 had materially changed since Molecular Partners had entered into the Amgen Agreement, Defendants omitted material information to investors.

42. With respect to the use of proceeds from the IPO, the Registration Statement told investors that the proceeds of the IPO would be used to propel MP0317 and other product candidates forward, stating:

> We currently intend to use the net proceeds from this offering, together with our existing cash and cash equivalents, to fund our planned Phase 1 clinical trial of MP0317, to advance the expansion of our research and development activities in our infectious disease program, which is expected to include the selection of an additional product candidate targeting infectious disease and the preclinical research and initiation of IND-enabling studies with respect to this product candidate, to advance our liquid tumor portfolio initially in acute myeloid leukemia through Phase 1 clinical development, and leveraging our CD3 platform to develop additional product candidates thereafter, to advance our platform and other potential product candidates and for working capital and other general corporate purposes.
>
> ….
>
> We currently expect to use the net proceeds from this offering, together with our existing cash and cash equivalents, as follows:
>
> - approximately $25 (CHF 22) million to fund our planned Phase 1 clinical trial for MP0317, the second product candidate in our oncology program, to completion;
>
> - approximately $40 (CHF 36) million towards the expansion of our research and development activities in our infectious disease program, which is expected to include the selection of an additional product candidate targeting infectious disease and the preclinical research and initiation of IND-enabling studies with respect to this product candidate;
>
> - approximately $43 (CHF 39) million to advance our liquid tumor portfolio initially in acute myeloid leukemia, or AML, through Phase 1 clinical development, and leveraging our CD3 platform to develop additional product candidates thereafter; and

the remainder to fund the advancement of our platform and other potential product candidates, working capital and other general corporate purposes.

43. This statement was materially false and misleading because the Registration Statement omitted that with the Amgen Agreement in jeopardy, there was a material likelihood that Molecular Partners would be forced to instead use the proceeds of the IPO for the development of MP0310, particularly in the context of expiring patents and licenses.

44. This action was brought within one year of the discovery of the untruthfulness of the statements and omissions and within three years of the IPO.

***The Truth Emerges***

45. On April 26, 2022, after the market closed, Molecular Partners announced that Amgen had terminated the Amgen Agreement, stating in a press release that:

> Amgen, its collaboration partner for MP0310 (AMG 506), has informed the Company of their decision to return global rights of MP0310 to Molecular Partners following a strategic pipeline review. Molecular Partners is presently conducting a phase 1 study of MP0310 and will look to present full phase 1 data at a scientific conference when available.
>
> \*       \*       \*
>
> No additional clinical studies of MP0310 have been planned at this time. Following completion of the ongoing Phase 1 study, the Company will look to initiate discussions with potential collaborators.
>
> The collaboration with Amgen was initiated in December 2018, providing an upfront payment of $50 million to Molecular Partners. Per the terms of the agreement, Molecular Partners is conducting the phase 1 clinical trial of MP310. Under the agreement with Amgen, following Phase 1 data, Amgen would have had the right to progress the program into later stage development, including into combination trials.

46. On this news, Molecular Partners' ADS price fell $5.19 per ADS, or 37.37%, to close at $8.70 per ADS on April 27, 2022, 59.06% below the $21.25 per ADS IPO price.

**CLASS ACTION ALLEGATIONS**

47. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class (as defined *supra* at ¶ 1). Excluded from the Class

13

are Defendants and their family members and directors and officers of Molecular Partners and their families and affiliates.

48. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. There are over 36 million Molecular Partners ADSs outstanding, owned by hundreds or thousands of persons.

49. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    a. Whether Individual Defendants signed the Registration Statement;

    b. Whether the Registration Statement contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading;

    c. Whether the Prospectus included an untrue statement of a material fact or omitted to state a material fact necessary in order to make its statements, in the light of the circumstances under which they were made, not misleading; and

    d. The measure of damage sustained by Class members.

50. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class acquired Molecular Partners ADSs pursuant to the Registration Statement and Prospectus.

51. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

52. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### FOR VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT AGAINST ALL DEFENDANTS

53. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct. Section 11 is a strict liability statute, subject only to affirmative defenses.

54. This Count is asserted against all Defendants on behalf of all persons who acquired shares of Molecular Partners' ADSs pursuant to Molecular Partners' Offering Documents, in which shares registered under the Registration Statement were sold, and is based upon Section 11 of the Securities Act. 15 U.S.C. §77k.

55. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein.

56. Molecular Partners is the issuer of the securities and as such is strictly liable for the material misstatements and omissions contained in the Registration Statement. The Individual Defendants each signed the Registration Statement or authorized the signing of the Registration Statement on their behalf and are therefore liable for the misrepresentations and omissions contained therein and the failure of the Registration Statement to be complete and accurate.

57. By reason of the conduct alleged, each of the Defendants violated Section 11 of the Securities Act.

58. Plaintiff and members of the Class acquired Molecular Partners ADSs pursuant to the Registration Statement used for the IPO, and, at the time of their purchases, were without

knowledge of the wrongful conduct alleged herein. This claim has been brought within one year of the discovery of the untrue statements and omissions and within three years of the date of the IPO.

59.     On July 12, 2022, the day this action was commenced, Molecular Partners ADSs closed at $6.62 per share.

60.     Plaintiffs and members of the Class are entitled to damages under Section 11 as measured by the provisions of Section 11(e), 15 U.S.C. §77k(e).

## COUNT II

### FOR VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT AGAINST THE INDIVIDUAL DEFENDANTS

61.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

62.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

63.     Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Molecular Partners within the meaning of Section 15 of the Securities Act. Individual Defendants had the power and influence and exercised the same to cause Molecular Partners to engage in the acts described herein.

64.     Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

65.     By virtue of the conduct alleged herein, the Individual Defendants are liable jointly and severally with and to the same extent as Molecular Partners to Plaintiffs and the Class for Molecular Partners' violations of the Securities Act as alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

  A. Determining that this action is a proper class action pursuant to Fed. R. Civ. P. 23, designating Plaintiff as class plaintiff, and approving Plaintiff's counsel as class counsel;

  B. Awarding compensatory damages pursuant to Section 11(e) of the Securities Act in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

  C. Awarding Plaintiff and the Class the consideration paid for Molecular Partners ADSs with interest thereon, less the amount of any income received thereon, upon the tender of the common stock, or for damages if the Plaintiff or Class member no longer owns their Molecular Partners ADSs;

  D. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

  E. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: May 23, 2023                                   Respectfully submitted,

                                                                      **THE ROSEN LAW FIRM, P.A.**

                                                                      */s/ Jacob A. Goldberg*
                                                                      Phillip Kim
                                                                      Jacob A. Goldberg
                                                                      Leah Heifetz-Li
                                                                      275 Madison Avenue, 40th Floor
                                                                      New York, NY 10016
                                                                      Tel: (215) 686-2817
                                                                      Fax: (212) 202-3827
                                                                      Email: pkim@rosenlegal.com
                                                                                  jgoldberg@rosenlegal.com
                                                                                  lheifetz@rosenlegal.com