**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES MERRITT, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No. 1:22-cv-05925-ER |
| vs. | |
| MOLECULAR PARTNERS AG, PATRICK AMSTUTZ, ANDREAS EMMENEGGER, WILLIAM M. BURNS, AGNETE FREDRIKSEN, STEVEN H. HOLTZMAN, SANDIP KAPADIA, VITO J. PALOMBELLA, MICHAEL VASCONCELLES, and DOMINK HÖCHLI, | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ..................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................... 2

III.  ARGUMENT................................................................................................................ 4

      A.    Fed. R. Civ. P. 8(a) Applies to the Court's Evaluation of the Complaint's
            Sufficiency .................................................................................................... 4

            1.    Standard Evaluating Defendants' Motion to Dismiss................................ 4

            2.    The Complaint Is Not a Puzzle Pleading ...................................................... 4

      B.    The Complaint Plausibly Pleads Materially Misstatements and Omissions........... 6

            1.    Section 11's Framework ............................................................................ 6

            2.    The Registration Statement Omitted Material Facts Concerning
                  the Market for MP0310................................................................................ 7

      C.    No Alleged Misstatement is an Opinion or Inactionable Puffery......................... 13

      D.    The Safe Harbor Protects No Alleged Misstatement........................................... 15

      E.    The Complaint Sufficiently Alleges a Section 15 Claim..................................... 16

IV.   CONCLUSION.......................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alberici v. Recro Pharma, Inc.*,
No. CV 18-2279, 2020 WL 806719 (E.D. Pa. Feb. 14, 2020)....................................................... 8

*Alpha Cap. Anstalt v. New Generation Biofuels, Inc.*,
No. 13-CV-5586 VEC, 2014 WL 6466994 (S.D.N.Y. Nov. 18, 2014)................................... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................ 4

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)........................................................................................................ 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................ 4

*Born v. Quad/Graphics, Inc.*,
521 F. Supp. 3d 469 (S.D.N.Y. 2021)............................................................................. 5

*City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*,
565 F. Supp. 3d 478 (S.D.N.Y. 2021)........................................................................... 12

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020)........................................................................... 16

*Constr. Laborers Pension Tr. for S. California v. CBS Corp.*,
433 F. Supp. 3d 515 (S.D.N.Y. 2020)............................................................................. 5

*Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prod., Inc.*,
129 F.3d 240 (2d Cir. 1997)............................................................................................ 4

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)............................................................................. 4

*Ganino v. Citizens Utilities Co.*,
228 F.3d 154 (2d Cir. 2000)........................................................................................ 6, 7

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985).......................................................................................... 7

*Halperin v. eBanker USA.com, Inc.*,
295 F.3d 352 (2d Cir. 2002).......................................................................................... 15

ii

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983)..................................................................................................... 6

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
    936 F.2d 759 (2d Cir. 1991)........................................................................................ 8

*In re Adams Golf, Inc. Sec. Litig.*,
    381 F.3d 267 (3d Cir. 2004)................................................................................ 10, 11

*In re Alstom SA*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005)....................................................................... 17

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
    851 F. Supp. 2d 746 (S.D.N.Y. 2012)....................................................................... 16

*In re BioScrip, Inc. Sec. Litig.*,
    95 F. Supp. 3d 711 (S.D.N.Y. 2015)......................................................................... 16

*In re DDAVP Direct Purchaser Antitrust Litig.*,
    585 F.3d 677 (2d Cir. 2009)......................................................................................... 4

*In re Eletrobras Sec. Litig.*,
    245 F. Supp. 3d 450 (S.D.N.Y. 2017)....................................................................... 14

*In re Fuwei Films Sec. Litig.*,
    634 F. Supp. 2d 419 (S.D.N.Y. 2009).................................................................. passim

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
    791 F.3d 90 (D.C. Cir. 2015) ..................................................................................... 13

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12 CIV. 8557 CM, 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ................................. 7, 13

*In re Intuitive Surgical Sec. Litig.*,
    65 F. Supp. 3d 821 (N.D. Cal. 2014) ......................................................................... 5

*In re Keyspan Corp. Sec. Litig.*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ................................................................. 10, 11

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
    650 F.3d 167 (2d Cir. 2011)....................................................................................... 16

*In re Pareteum Sec. Litig.*,
    No. 19 CIV. 10460 (AKH), 2020 WL 3448526 (S.D.N.Y. June 23, 2020) .............................. 5

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993).............................................................................................. 7

iii

*In re WorldCom, Inc. Sec. Litig.*,
    346 F. Supp. 2d 628 (S.D.N.Y. 2004)................................................................................ 9, 10

*Kronfeld v. Trans World Airlines, Inc.*,
    832 F.2d 726 (2d Cir. 1987)................................................................................................ 9

*Lau v. Opera Ltd.*,
    527 F. Supp. 3d 537 (S.D.N.Y. 2021)................................................................................ 12

*Litwin v. Blackstone Grp., L.P.*,
    634 F.3d 706 (2d Cir. 2011)................................................................................................ 6

*McVicar v. Goodman Glob. Inc.*,
    No. SACV131223DOCRNBX, 2014 WL 12573992 (C.D. Cal. Nov. 13, 2014).................... 11

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)............................................................................................ 4, 6

*Michaels Bldg. Co. v. Ameritrust Co.*,
    848 F.2d 674 (6th Cir. 1988) .............................................................................................. 6

*Miller v. Lazard, Ltd.*,
    473 F. Supp. 2d 571 (S.D.N.Y. 2007)................................................................................. 7

*New England Carpenters Guaranteed Annuity and Pension Funds v. DeCarlo*, Docket,
    No. 20-1643-cv, --- F.4th ---, 2023 WL 5419147 (2d Cir. Aug. 23, 2023).......................... 14

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)............................................................................................. 14

*Olkey v. Hyperion 1999 Term Tr., Inc.*,
    98 F.3d 2 (2d Cir. 1996)..................................................................................................... 8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015).......................................................................................................... 14

*P. Stolz Fam. P'ship L.P. v. Daum*,
    355 F.3d 92 (2d Cir. 2004)............................................................................................... 16

*Rougier v. Applied Optoelectronics, Inc*,
    No. 4:17-CV-2399, 2019 WL 6111516 (S.D. Tex. Mar. 27, 2019) ...................................... 6

*Saddle Rock Partners, Ltd. v. Hiatt*,
    No. 95-2326 GA, 1996 WL 859986 (W.D. Tenn. Mar. 26, 1996) ......................................... 6

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*,
    75 F.3d 801 (2d Cir. 1996)............................................................................................... 13

*Seibert v. Sperry Rand Corp.*,
    586 F.2d 949 (2d Cir. 1978)..................................................................................... 9, 10

*Setzer v. Omega Healthcare Invs., Inc.*,
    968 F.3d 204 (2d Cir. 2020)................................................................................... 12, 13

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)......................................................................................... 15

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)......................................................................................... 11

**Statutes**

15 U.S.C. § 77k(a) ............................................................................................................ 7

15 U.S.C. § 77l (a)(2)........................................................................................................ 7

**Rules**

Fed. R. Civ. P. 8(a) ...................................................................................................... 4, 6

Fed. R. Civ. P. 8............................................................................................................... 5

v

Lead Plaintiff James Merritt ("Plaintiff") submits this memorandum of law in opposition to Defendants' motion to dismiss ("Motion") the Amended Class Action Complaint ("Complaint").[1]

## I.    PRELIMINARY STATEMENT

Defendants raised over $59 million on a registration statement ("Registration Statement") that materially misled investors about the strength and potential of the Company's collaboration with Amgen Inc. ("Amgen").

The Registration Statement touted Molecular Partners' collaboration with Amgen on MP0310, an oncology product candidate for the potential treatment of fibroblast activation protein ("FAP") positive cancers and the Company's lead oncology product candidate. The Registration Statement omitted, however, that with three of four DARPin base technology patents that the Company licensed from the University of Zurich about to expire in September 2021, a competitor to Amgen was already well into clinical trials for its own FAP positive tumors treatment, with three trials that were larger and further along than Molecular Partners' Phase 1 clinical trial of MP0310. By failing to disclose this increasing competition, which materially devalued MP0310 and undermined Amgen's partnership with Molecular Partners, the Registration Statement materially misled investors. When Amgen terminated its partnership with Molecular Partners, the Company's ADS price plummeted 37.37%, 59.06% below the $21.25 per ADS IPO price.

---

[1] The "Individual Defendants" are Patrick Amstutz ("Amstutz"), Andreas Emmenegger ("Emmenegger"), William M. Burns ("Burns"), Agnete Fredriksen ("Fredriksen"), Steven H. Holtzman ("Holtzman"), Sandip Kapadia ("Kapadia"), Vito J. Palombella ("Palombella"), Michael Vasconcelles ("Vasconcelles"), and Domink Höchli ("Höchli"). "Defendants" are the Individual Defendants and Molecular Partners AG ("Molecular Partners" or "Company"), Otherwise undefined terms are defined in the Amended Class Action Complaint ("Complaint"). Paragraph citations ("¶___") are to the Complaint. (Dkt. No. 18).

Plaintiff bears only the burden of Rule 8(a)'s notice pleading standard. The Complaint meets it.

## II.    STATEMENT OF FACTS

Molecular Partners is a clinical-stage biopharmaceutical company, focusing on the development of therapeutic proteins. Molecular Partners uses a DARPin (an acronym for designed ankyrin repeat protein) platform to build product candidates with multiple mechanisms of action to address biological problems. It has not yet brought any products to market. ¶24.

On December 18, 2018, Molecular Partners entered into a Licensing and Collaboration Agreement with Amgen ("Amgen Agreement") for the clinical development and commercialization of MP0310/AMG 506 ("MP0310"). ¶29. Under the terms of the Amgen Agreement, Molecular Partners granted Amgen an exclusive worldwide, royalty-bearing, sublicensable license under the Company's patents and know-how relating to MP0310 to develop and commercialize the potential product. *Id.* Under the Amgen Agreement, Molecular Partners received a nonrefundable upfront payment of $50 million, and became eligible to receive up to $497 million in development, regulatory, and commercial milestone payments, as well as double-digit, tiered royalties up to the high teens. Molecular Partners led the clinical development, manufacturing, and regulatory activities in the first clinical phase. Based on its development plan for MP0310 and the contractual agreement, the Company assigned the full $50 million upfront as the transaction price to this performance obligation. ¶30.

On April 22, 2021, Molecular Partners filed the Registration Statement on Form F-1 with the United States Securities and Exchange Commission ("SEC") in connection with the initial public offering ("IPO") of its American Depositary Shares ("ADSs"). After several amendments, on June 15, 2021, the SEC declared "effective" the Registration Statement. ¶25.

2

Leading up to its IPO, the Company repeatedly touted the clinical and commercial prospects of certain of its product candidates, especially MP0310. Molecular Partners was developing MP0310 in partnership with Amgen for the treatment of certain types of cancer. ¶27. The Registration Statement described MP0310 as one of Molecular Partners' most advanced product candidates. ¶28.

The Registration Statement also told investors that Molecular Partners intended to use Amgen payments to fund the development of MP0310, and the IPO proceeds for other projects. Specifically, the Company planned to use approximately $25 million of the IPO proceeds to fund its planned Phase 1 clinical trial of another oncology product candidate, MP0317, ¶¶31-32, while promising to devote approximately $40 million to expanding the Company's infectious disease program and $43 million to advance its liquid tumor portfolio. ¶33. In other words, if Amgen terminated the Amgen Agreement, the Company's ability to continue developing MP0310, its lead product candidate, would require diverting funds from other initiatives, diluting the resources the Registration Statement earmarked for other products. *Id.* More, the Registration Statement repeatedly discussed the Company's partnership with Amgen. *See, e.g.,* ¶¶36, 38, 40.

In April 2021, however, the same month that Molecular Partners first filed the Registration Statement and only two months before the IPO, Amgen's competitor, Roche, began enrolling patients in trials for two of its own FAP-positive solid tumor treatments that were each further along and larger than the trial of MP0310. Roche had already commenced a trial for a third such candidate. Additionally, three of four DARPin base technology patents that the Company licensed from the University of Zurich were about to expire in September 2021. ¶37.

On April 26, 2022, after the market closed, Molecular Partners announced that Amgen had terminated the Amgen Agreement. ¶45. On this news, Molecular Partners' ADS price fell $5.19

3

per ADS, or 37.37%, to close at $8.70 per ADS on April 27, 2022, 59.06% below the $21.25 per ADS IPO price. ¶46.

## III.    ARGUMENT

### A.    Fed. R. Civ. P. 8(a) Applies to the Court's Evaluation of the Complaint's Sufficiency

#### 1.    Standard Evaluating Defendants' Motion to Dismiss

Evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss, courts accept all well-pleaded allegations in a complaint as true, drawing all inferences in the plaintiff's favor. *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 692 (2d Cir. 2009). Although the factual allegations "must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), once a complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), it may proceed even if "actual proof of those facts is improbable." *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 179 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 556). For cases alleging Securities Act violations alone, courts apply Rule 8(a)'s notice pleading standard. *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014) ("At this stage, dismissal is appropriate only where appellants can prove no set of facts consistent with the complaint that would entitle them to relief) (citing *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prod., Inc.*, 129 F.3d 240, 242–43 (2d Cir. 1997)). Thus, notice pleading applies, and the Court, determining the allegations' plausibility, will deny Defendants' Motion.

#### 2.    The Complaint Is Not a Puzzle Pleading

The Court should reject Defendants' contention that the complaint is a "puzzle pleading" because it does not fail meaningfully to explain how the materially false statements that it pleads

4

are false and misleading. *See* Def. Br. at 14-15. On the face of their Memorandum, however, Defendants betray the weakness of this argument.

So-called puzzle pleadings "'abuse the principles of Rule 8 ***not*** because they are not short' but ***because they are not plain***." *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014) (emphasis added). It suffices for a complaint to "detail[] each problematic statement, allege[] that each statement is false and misleading, and allege[] the reasons as to why each statement [is] false and misleading." *Id.* The Complaint succeeds, with specificity with respect to each false statement. ¶¶38-39, 40-41, 42-43. *Cf. In re Pareteum Sec. Litig.*, No. 19 CIV. 10460 (AKH), 2020 WL 3448526, at *1–2 (S.D.N.Y. June 23, 2020) (describing as puzzle pleadings complaints that consist of large blocks of allegedly false quotations followed by a single statement of allegedly true facts, requiring the Court to search long quotations for particular false statements).

Defendants argue that the Complaint fails to allege facts showing that the statements it pleads are false and misleading with specificity. Def. Br. at 14-15. That is hardly the point. For even if the Complaint's allegations are implausible—they are not—in no way whatsoever are they disparate pieces, disabling Defendants from understanding the claims. Defendants ignore that the Complaint plainly alleges that sections of the Registration Statement are false because of *omissions,* not the literal falsity of the statements they contain. ¶¶38, 41, 43. Accordingly, *Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 478–79 (S.D.N.Y. 2021) is inapposite. While in *Quad/Graphics,* the Court found that the plaintiff "plac[ed] the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts[,]" *Constr. Laborers Pension Tr. for S. California v. CBS Corp.*, 433 F. Supp. 3d 515, 530 (S.D.N.Y. 2020), in this case, each allegation reproduces a statement, in context, then explains precisely why that foregoing statement materially misleads for omitting critical context.

Thus, the Complaint pleads sufficient detail, "provid[ing] defendant fair notice of the substance of ... plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir. 1988); *see Saddle Rock Partners, Ltd. v. Hiatt*, No. 95-2326 GA, 1996 WL 859986, at *7 (W.D. Tenn. Mar. 26, 1996); *Rougier v. Applied Optoelectronics, Inc*, No. 4:17-CV-2399, 2019 WL 6111516, at *8 (S.D. Tex. Mar. 27, 2019). No more is required under Rule 8(a). Indeed, Defendants' Memorandum hoists them by their own petard, demonstrating—with no qualification—that the Complaint fully and adequately notified them of what statement was false and why. In particular, Defendants have readily identified and listed the false statements and stated why the Complaint alleges they misled investors. Def. Br. at 11-13. The Complaint is not a puzzle pleading and this Court will not dismiss it on those grounds. Defendants' attempt to queer Rule 8(a)'s pleadings standard fails, and this Court should reject it.

### B.    The Complaint Plausibly Pleads Materially Misstatements and Omissions

#### 1.    Section 11's Framework

Section 11 of the Securities Act imposes liability on a security's issuer, underwriter, and anyone who signed a registration statement when the registration statement for that security contains "a material omission in contravention of an affirmative legal disclosure obligation." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011); *see also JinkoSolar*, 761 F.3d at 250 (Section 11 "imposes liability for a material misstatement of fact or an omission to state a fact that renders a statement made materially misleading"). There is strict liability on the part of the security's issuer. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983).

A plaintiff can demonstrate materiality at the pleading stage by merely alleging a statement or omission that "a reasonable investor would have considered [it] significant in making investment decisions." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161–62 (2d Cir. 2000)

(citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)). Courts may not dismiss "'a complaint . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *Ganino*, 228 F.3d at 162 (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Complaint adequately pleads violations of the Securities Act.

### 2.     The Registration Statement Omitted Material Facts Concerning the Market for MP0310

Defendants argue that the Complaint fails to allege that the misstatements in the Registration Statement the Complaint identifies are misleading. Def. Br. at 15-20. They are wrong. The Complaint plausibly pleads their omission of material information and their duty to disclose it. Their omissions rendered their statements about the market for MP0310, while literally true, materially misleading.

"A duty to disclose may arise from the obligation to make statements contained in the Registration Statement 'not misleading.'" *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 439 (S.D.N.Y. 2009), quoting 15 U.S.C. §§ 77k(a), 77*l* (a)(2); *see also Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 580 (S.D.N.Y. 2007) ("The Second Circuit has held that 'one circumstance creating a duty to disclose arises when disclosure is necessary to make prior statements not misleading.' " (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268 (2d Cir. 1993))). "A defendant is not required to disclose all known information, but has a duty to disclose any information that is necessary to make other statements not misleading." *Fuwei*, 634 F.Supp.2d at 439 (internal citations omitted). More, "[a] corporation has a duty to disclose a major dispute or uncertainty that exists in an important business relationship where the company publicly touts that specific relationship and the uncertainty may significantly affect the corporation's financial success." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 CIV. 8557 CM, 2013 WL 6233561, at *13 (S.D.N.Y.

Dec. 2, 2013) (the Court could not hold that defendants had satisfied their disclosure duties with respect to a contract dispute once it had ripened).

A false statement is material where, reading a document is a whole, the statement misleads investors. "The inquiry does not focus on whether particular statements, taken separately, were literally true, but whether [D]efendants' representations, taken together and in context, would have misl[ed] a reasonable investor about the nature of the [securities]." *Fuwei*, 634 F.Supp. 2d at 440 (internal quotations omitted). "A prospectus will violate federal securities laws if it does not disclose 'material objective factual matters,' or buries those matters beneath other information, or treats them cavalierly." *Olkey v. Hyperion 1999 Term Tr., Inc.*, 98 F.3d 2, 5 (2d Cir. 1996) (quoting *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991)).

The Registration Statement omitted facts concerning the potential market for MP0310, disabling investors from understanding the likelihood of Amgen's terminating the Amgen Agreement. That Roche had three trials for drug candidates for the treatment of FAP-positive solid tumors that were further along than MP0310 altered the total mix of information about Molecular Partners' treatment candidate that was closest to a possible approval application and commercialization. *See Alberici v. Recro Pharma, Inc.*, No. CV 18-2279, 2020 WL 806719, at *12 (E.D. Pa. Feb. 14, 2020) (holding that information was material where it concerned the company's lead product, writing that because the drug that was the subject of alleged misrepresentations was the company's lead product, investors would have considered the negative views of "Key Opinion Leaders" highly relevant). That disclosure was necessary to render the Registration Statement's statements about the potential of the development plan for MP0310 with Amgen not misleading. None of Defendants' arguments suggest otherwise.

First, Defendants' argument that the Roche trials' public disclosure on the clinicaltrials.gov shields them from liability for omitting them from the Registration Statement is without merit. As a matter of fact, the Registration Statement, itself, undermines Defendants' assertion. The Registration Statement expressly directs investors to specific sources for complete information, stating:

> We have filed with the SEC a registration statement on Form F-1 under the Securities Act with respect to the ADSs offered hereby. This prospectus, which constitutes a part of the registration statement, does not contain all of the information set forth in the registration statement or the exhibits and schedules filed therewith. For further information with respect to us and the ADSs offered hereby, please refer to the registration statement and the exhibits and schedules filed therewith.

Def. Ex. 1 at 252. Additionally, the Registration Statements states:

> We have not, and the underwriters have not, authorized anyone to provide you with different information, and we and the underwriters take no responsibility for any other information others may give you.

Def. Ex. 1 at i. In other words, not only does the Registration Statement not mention www.clinicaltrials.gov or Roche as another source of information, but it expressly warns investors not to rely on information outside of the Registration Statement.

More, as a matter of law, while registration statements need not disclose "'matters of general public knowledge,'" *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 687 (S.D.N.Y. 2004) (quoting *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978)), "serious limitations" disable a registrant from "charg[ing] its stockholders with knowledge of information omitted from a document such as a proxy statement or prospectus on the basis that the information is public knowledge and otherwise available to them." *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726, 736 (2d Cir. 1987). Defendants' insistence that investors scour the world for each and every material fact related to a public offering undermines the Securities Act's statutory framework, requiring inclusion of material information that Defendants are duty bound to disclose.

*Fuwei*, 634 F.Supp.2d 419, 437-48, is directly on point. In *Fuwei*, the defendants argued that the information that plaintiff alleged that they omitted from IPO documents were actually matters of general public knowledge because it was included in three articles published in Chinese before the company's IPO. The court found that newspaper articles do not necessarily make the information they contain matters of public knowledge that can be imputed to shareholders. Like those articles, on the pleadings, the Court should find that information Roche posted on www.clinicaltrials.gov is not a matter of general public knowledge. *See also WorldCom,* 346 F. Supp. 2d at 688 (holding that sporadic press reports or reports published in other contexts may not be considered information reasonably available to investors); *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 276 n.10 (3d Cir. 2004) (reversing dismissal, and holding that a single pre-IPO press release was insufficient to inform the public).

By contrast, the cases Defendants cite are inapposite. *See* Def. Br. at 18. In *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003), the Court specifically analyzed public filings ***made by the defendant company.*** Here, the information that Defendants argue was general public knowledge was only available through filings by another company, Roche, on www.clinicaltrials.gov. In *Seibert. v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978), the information at issue was the subject of intense media attention, discussions in Congress, and a nationwide boycott, far from an obscure filing by another company in the field). Indeed, in *Adams Golf*, the Third Circuit specifically distinguished *Seibert,* describing it as holding that there was "no obligation to disclose labor difficulties when those problems were 'reported countrywide in the press and on radio and television, were discussed in Congress, and were analyzed in published administrative and judicial opinions.'" 381 F.3d 267, 276 n.10. An announcement by the defendant company in a single press release before the Company went public was, the Court wrote, "simply

unlike the publicly known or available facts in the above case[]." *Id.* In *Tongue v. Sanofi*, 816 F.3d 199, 213 (2d Cir. 2016), the Court addressed information that was a well-known public preference by a relevant regulatory body; more, plaintiffs were described as sophisticated investors. Other courts have made similar distinctions. *See, e.g., Alpha Cap. Anstalt v. New Generation Biofuels, Inc.*, No. 13-CV-5586 VEC, 2014 WL 6466994, at *9 (S.D.N.Y. Nov. 18, 2014) (specifically distinguishing the information in *Keyspan* as "more obviously accessible" than "relatively obscure" reports available through searchable online databases); *McVicar v. Goodman Glob. Inc.*, No. SACV131223DOCRNBX, 2014 WL 12573992, at *6 (C.D. Cal. Nov. 13, 2014) (differentiating disclosures made by the defendant company and a third party).

Defendants' argument that the Registration Statement disclosed that three of four DARPin base technology patents that the Company licensed from the University of Zurich were about to expire in September 2021 evades the point, plain on its face, of that allegation. *See* Def. Br. at 16 and 18, addressing ¶¶37, 39, 41. Plaintiff's allegation is not that the Registration Statement omitted this information. Rather, its disclosure omits the critical context that Roche was now winning the race in this field. Without that context, the simple fact of the patent expiration is incomplete, and through its incompletion, misleading. *See Fuwei*, 634 F.Supp.2d 419, 439. It supports the importance of the Amgen Agreement to the Company even as the Registration Statement omits negative, material facts about the development process for MP0310.

Second, Plaintiff does not, in Defendants' words, seek to "hold Molecular Partners liable for failing to disclose information about their licensing partner's corporate decisions." Def. Br. at 17. Rather, the Complaint plausibly alleges that the Registration Statement omitted information that materially changed the Company's own risk profile with respect to Amgen's decisions. Amgen's assessment of the value of the Amgen Agreement may or may not have been within Defendants' knowledge. *See* Def. Br. at 17. The market for MP0310, the Company's lead oncology product

11

candidate, however, was very much Molecular Partners' business. The Registration Statement was required to disclose relevant information concerning the market for MP0310 so that investors could make their *own* informed assessment about the risk of the discontinuation of the Amgen Agreement. Accordingly, far from "destroy[ing] Plaintiff's falsity theory," Def. Br. at 17, whether the Company—strictly liable under Section 11 of the Securities Act—knew of Amgen's valuation of the Amgen Agreement is irrelevant.

The literal truth of the Registration Statement's description of provisions of the Amgen Agreement is similarly irrelevant to whether the Registration Statement omitted material facts. *See* Def. Br. at 19. It is well settled that whether a statement is misleading depends on context: "[e]ven if statements are not literally false, the veracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers." *City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 565 F. Supp. 3d 478, 491–92 (S.D.N.Y. 2021) (internal quotations and citations omitted); *see also Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 551 (S.D.N.Y. 2021) ("An entirely truthful statement may provide a basis for liability if material omissions related to the content of the statement make it materially misleading." (citation and modifications omitted)); *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 213–214 (2d Cir. 2020) dismissal, finding a truthful statement about delinquency misleading in the context of omission of facts hiding the full extent of a problem).

Disclosing key provisions of the Amgen Agreement, including its financial terms and its termination provisions, while omitting that the market for the agreement's subject had materially changed, rendered the Registration Statement's disclosures of its terms materially misleading. By explaining how Amgen could terminate the agreement without disclosing that the market for MP0310 had changed, the Registration Statement effectively left the potential of a termination by

12

Amgen "for convenience" (¶40) by Amgen in the realm of the theoretical. To assess accurately the risk of termination, however, the Registration Statement should have disclosed Roche's materially more advanced progress on competing therapies. "A corporation has a duty to disclose a major dispute or uncertainty that exists in an important business relationship where the company publicly touts that specific relationship and the uncertainty may significantly affect the corporation's financial success." *Hi-Crush*, 2013 WL 6233561, at \*13; *see also Omega*, 968 F.3d 204, 213-214 (reversing dismissal, holding that a company had a duty to disclose the full extent of a problem with a material contract). The Roche trials created precisely such an uncertainty, requiring their disclosure in the Registration Statement. Their omission is, therefore, actionable, requiring denial of Defendants' Motion to Dismiss.

### C.     No Alleged Misstatement is an Opinion or Inactionable Puffery

Contrary to Defendants' assertion, the Registration Statement's disclosures about the potential for MP0310 and the possible outcome of the Amgen Agreement are statements of fact, not puffery. *See* Def. Br. at 20-22. While vague statements of optimism or aspirations are not actionable, these particular statements were no such thing. MP0310 was the Company's leading oncology drug candidate and, thus, material to investors. *See, e.g.,* ¶28. The Registration Statement was required to make complete material disclosures concerning its potential.

Puffery is the sort of generalized statement of optimism that is not capable of objective verification. *In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 109 (D.C. Cir. 2015). When evaluating whether a statement is puffery, "the critical inquiry is whether the statement could 'have misled a reasonable investor'. . . given the context in which it was made." *Id.* (quoting *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 811 (2d Cir. 1996)). "While statements containing simple . . . expressions of optimism . . . are insufficient, defendants may be liable for misrepresentations of existing facts." *Novak v. Kasaks*, 216 F.3d 300,

13

315 (2d Cir. 2000) (finding that statements that a company's inventory was "in good shape" or "under control" when defendants knew that the contrary was true was not mere puffery). When they discussed the potential of MP0310 and the partnership with Amgen but omitted the status of the competing Roche trials, the Registration Statement misrepresented the most recent information available to them about the potential market for MP0310. As a result, they rendered investors unable to assess the likelihood of that potential materializing. This is not puffery, but misrepresentation of material facts. *See In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 463 n.6 (S.D.N.Y. 2017) (statements that "purported to reflect the Company's current state of affairs" were not puffery).

Nor are any statements protected as opinions. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) is clear that "a thing done or existing or an actual happening" is fact, not opinion. An opinion can implicitly convey "facts about how the speaker has formed the opinion – or, otherwise put, about the speaker's basis for holding that view." *Id.* at 188. A reasonable investor can expect that opinion statements in a registration statement "fairly align [] with the information in the issuer's possession at the time[.]" *New England Carpenters Guaranteed Annuity and Pension Funds v. DeCarlo*, Docket No. 20-1643-cv, --- F.4th ---, 2023 WL 5419147, at *6 (2d Cir. Aug. 23, 2023), quoting *Omnicare*, 575 U.S. 175, 188-90. More, the Second Circuit recently held that where a complaint adequately alleges that it was "improbable" that an event would occur, even a statement of opinion about such an event would be actionable. *DeCarlo*, 2023 WL 5419147, at *11. In this case, the Complaint alleges that the then-existing advancement of the Roche trials materially changed the risk of termination of the Amgen Agreement. Accordingly, the Registration Statement's disclosures concerning its potential are actionable as well.

14

### D. The Safe Harbor Protects No Alleged Misstatement

Defendants' material omissions are not protected from liability as forward-looking statements. *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002), clarifies.

Courts analyze claims of misrepresentations in registration statements where cautionary language is present by first identifying the allegedly undisclosed risk and then reading the allegedly fraudulent materials, including the cautionary language, to determine if a reasonable investor could have been misled into thinking that the risk that materialized and resulted in their loss did not actually exist. *Id.* In the words of the Second Circuit, "[C]autionary language [that] did not expressly warn of or did not directly relate to the risk that brought about plaintiffs' loss" is insufficient for the bespeaks-caution doctrine to obtain. *Halperin*, 295 F.3d at 359.

Defendants argue that their risk disclosure about "[c]ompetition in the oncology space[,]" suffices to warn about the competitive risk the progress in the Roche trials created. Def. Br. at 23, Def. Ex. 1.[2] Specifically, they note that MP0310 would, "if approved, . . . compete with agents that are currently in development including monoclonal antibodies, or mAbs, and other small molecule approaches." *Id*. The Registration Statement's omission of Roche's progress, however, renders the warning itself false in turn. ¶¶37, 39, 41. That risk had already materialized at the time of the IPO. In *Fuwei*, 634 F.Supp.2d 419, 442, the Court held that the bespeaks-caution doctrine did not apply because the allegations at issue concerned misrepresentations and omissions of present and historical facts, such as the then-present legality of a Fuwei acquisition and any then-present

---

[2] This Court may consider Def. Ex. 1 for the fact that it contained certain language, but not for the truth of its contents. *See, e.g., Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (at the pleadings stage, courts may take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, but not for the truth of their contents).

challenges to that acquisition.[3] Similarly, this case concerns the Roche trials that had advanced beyond the Company's at the time of the IPO. This was not at all the same risk as the possibility that Roche's product could outcompete MP0310 if they were both commercialized and approved. Because the Registration Statement's risk disclosure is, itself, materially misleading, it cannot trigger the safe harbor.

### E. The Complaint Sufficiently Alleges a Section 15 Claim

Section 15 imposes joint and several liability on "[e]very person who, by or through stock ownership, agency, or otherwise . . . controls any person liable under" Section 11. *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011). "To establish § 15 liability, a plaintiff must show a 'primary violation' of § 11 and control of the primary violator by defendants." *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 746 (S.D.N.Y. 2015). Courts within this District generally hold that for purposes of pleading control person liability under the Securities Act, "culpable participation is not required under § 15." *Id.* at 746; *see also In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 773 (S.D.N.Y. 2012) ("While the Second Circuit has yet to address the question of whether a plaintiff bringing a Section 15 claim must allege 'culpable participation,' a majority of judges in this District-including the undersigned-have held such an allegation is not required").

The Individual Defendants each signed the Registration Statement used to conduct the IPO, ¶¶12-20, and therefore qualify as "control person[s]" for the purposes of Section 15. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 428–429 (S.D.N.Y. 2020) (control person allegation sufficient where complaint alleged defendant "'signed

---

[3] *P. Stolz Fam. P'ship L.P. v. Daum*, 355 F.3d 92, 97 (2d Cir. 2004) (bespeaks-caution doctrine deals with the future, not the present or past, and did not apply where the risk of which the defendant company warned was already the case).

or authorized the signing of' the IPO registration Statement and Prospectus"); *see also In re Alstom SA*, 406 F. Supp. 2d 433, 494–95 (S.D.N.Y. 2005) ("It comports with common sense to presume that a person who signs his name to a report has some measure of control over those who write the report") (internal quotation marks and alterations omitted). As such, the Complaint adequately pleads control person liability under Section 15 of the Securities Act.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion in its entirety. If the Complaint is dismissed, Plaintiff respectfully submits that the dismissal should be without prejudice.

Dated: September 7, 2023

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Jacob A. Goldberg*
Phillip Kim
Jacob A. Goldberg
Leah Heifetz-Li
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (215) 686-2817
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        jgoldberg@rosenlegal.com
        lheifetz@rosenlegal.com