UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES MERRITT, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MOLECULAR PARTNERS AG, PATRICK AMSTUTZ, ANDREAS EMMENEGGER, WILLIAM M. BURNS, AGNETE FREDRIKSEN, STEVEN H. HOLTZMAN, SANDIP KAPADIA, VITO J. PALOMBELLA, MICHAEL VASCONCELLES, and DOMINIK HOCHLI, <br><br> Defendants. | Case No. 1:22-cv-05925-AS |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Dated:        October 5, 2023

COOLEY LLP
Brian M. French
55 Hudson Yards
New York, NY  10001
Tel: (212) 479-6000
bfrench@cooley.com

Koji Fukumura (*pro hac vice*)
10265 Science Center Drive
San Diego, CA  92121
Tel: (858) 550-6000
kfukumura@cooley.com

Luke T. Cadigan (*pro hac vice*)
Elizabeth M. Wright (*pro hac vice*)
Zachary Sisko (*pro hac vice*)
500 Boylston Street, 14th Floor
Boston, MA  02116
Tel: (617) 937-23000
lcadigan@cooley.com
ewright@cooley.com
zsisko@cooley.com

Plaintiff's Opposition ("Opp.") only confirms the substantial deficiencies in the Amended Complaint, which should be dismissed with prejudice. Plaintiff cannot escape these simple facts:

- By April 2020—a full year before the Registration Statement was filed—analysts reported about Roche's competing drug candidates;

- In April 2021, Roche began enrolling patients in two separate clinical trials—a fact widely known and disclosed on the federal government's clinical trials website;

- Molecular Partners' Registration Statement (filed April 22, 2021, amended June 14, 2021, and considered effective June 15, 2021) included robust risk disclosures about competition, its partnership agreements, and its patents;

- A year later, in April 2022, Amgen terminated its agreement with Molecular Partners— an Amgen decision of which Molecular Partners had no advance notice.

No amount of creative argument can change this undisputed timeline: the market *already knew* of the competition in the industry, including by Roche, at the time of the IPO. And Plaintiff offers no explanation for why—if the Roche trials did so "materially" change the competition—that information renders any challenged statement misleading. Plaintiff would hold Defendants liable for not specifically disclosing the name and status of its *competitor's* drug candidates, because that *may* have impacted how Molecular Partners' *licensing partner*, Amgen, viewed the Amgen Agreement. The law does not require such labyrinthian disclosures. Plaintiff's falsity theory is unrelated to the allegedly misleading statements, and should be rejected.

Plaintiff similarly fails to explain why Defendants had any obligation to inform investors of the alleged omissions (which were publicly available), and why Defendants' robust risk disclosures about "intense competition" in the oncology space failed to sufficiently caution investors. Under any pleading standard,[1] the Amended Complaint fails to state a claim.

---

[1] Defendants contend that the Amended Complaint constitutes an improper puzzle pleading for the reasons explained in their initial Motion to Dismiss ("Mot.") and should be dismissed accordingly. (Mot. at 14-15.) Regardless of the Court's determination on that issue, however, Plaintiff's allegations should be dismissed because the Amended Complaint fails to state a claim under either Section 11 or Section 15 of the Securities Act, as described further below.

1

## I.    THE AMENDED COMPLAINT FAILS TO PLEAD FALSITY

Plaintiff's primary contention is that the Registration Statement "omitted facts" about a competitor's (Roche's) drug candidates, which "disabled investors from understanding the likelihood of Amgen's terminating the Amgen Agreement." (Opp. at 8.) But Plaintiff seeks to hold Defendants to a standard that is not law: "A defendant is not required to disclose all known information, but has a duty to disclose any information that is necessary to make other statements not misleading." *In re All. Pharm. Corp. Sec. Litig.*, 279 F. Supp. 2d 171, 182 (S.D.N.Y. 2003) (internal quotation omitted).

Plaintiff cites no law nor allegation that explains how these alleged non-disclosures render the Registration Statement misleading. Plaintiff does not allege, for example, that Amgen terminated the Amgen Agreement because of the Roche trials, or that Defendants were aware that MP0310 was less likely to be approved than Roche's competing drug candidates. There simply is no connection between the alleged omissions and Defendants' statements about the Amgen Agreement. The Amended Complaint should be dismissed as a result. *In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *18 (S.D.N.Y. Aug. 1, 2017) (dismissing claims for failure to allege knowledge of "contradictory information" contrary to public statements about relationship with partner).

## II.    DEFENDANTS HAD NO DUTY TO DISCLOSE THE ALLEGED OMISSIONS

Plaintiff similarly fails to identify any obligation to disclose the allegedly omitted information. Companies have "no duty to disclose the activity of [its] competitors or to state publicly that the Company was losing ground to competitors." *Steinberg v. PRT Grp.*, 88 F. Supp. 2d 294, 304 (S.D.N.Y. 2000); *Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 485 (S.D.N.Y. 2021) (explaining defendants had "no duty to disclose any additional detail" about competitors, where plaintiffs were unable to "show that Defendants' statements . . . were misleading absent

2

additional disclosure concerning" the competition). Plaintiff cites no cases to the contrary.

Further, courts recognize that public information—including information about clinical trials published on ClinicalTrials.gov—need not be disclosed in offering materials. *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 410-11 (S.D.N.Y. 2018) (rejecting plaintiffs' claim that certain information was kept from the public when it was disclosed on ClinicalTrials.gov); *Tyman v. Pfizer, Inc.*, 2017 WL 6988936, at *3 n.5 (S.D.N.Y. Dec. 27, 2017) (the purpose of ClinicalTrials.gov is to "provide the public with easy access to information" on pending trials). Information about Roche's trials was available to investors at the time of the IPO, both on the ClinicalTrials.gov website and in analyst reports. (*See* Ex. A[2] at 2 (noting that Roche "is advancing a similar bispecific RG7827 [to MP0310]"); Ex. B at 2 (same); Ex. C at 2 (same).)

Plaintiff sweeps aside this clear precedent, variously arguing that he is not a "sophisticated investor[]" and the allegedly omitted information came from a third party, not Defendants. (Opp. at 10-11.) But offering materials are not "required to address [reasonable investors] as if they were children in kindergarten," and companies need not disclose information "already in the mix of public information at the time of [the] IPO." *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 596, 601 (S.D.N.Y. 2022) (dismissing Section 11, 12, and 15 claims with prejudice). Plaintiff's extensive reliance on *In re Fuwei Films Sec. Litig.* is unpersuasive, as the allegedly public information was only available in Chinese newspapers and published in Chinese—a far cry from the readily available information here. 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009).[3]

Nor was Molecular Partners required to speculate in the Registration Statement about what

---

[2] "Ex." refers to exhibits to the Declaration of Zachary Sisko in Support of Defendants' Reply, filed herewith.
[3] Plaintiff's other cases are similarly inapposite. *See In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 688 (S.D.N.Y. 2004) (denying motion for summary judgment where there was "issue of fact" as to whether non-disclosure was material, but noting that undisclosed information "may have been a matter of wide public knowledge"); *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 276 n.10 (3d Cir. 2004) (public disclosure argument held to be inconsistent with arguments regarding timing of stock drop).

may or may not occur with the Amgen Agreement. Plaintiff cites *In re Hi-Crush Partners L.P. Sec. Litig.* to assert that "the Registration Statement should have disclosed Roche's materially more advanced progress on competing therapies." (Opp. at 13.) But *Hi-Crush* held the exact opposite with respect to the Section 11 and 15 claims. 2013 WL 6233561, at *11 (S.D.N.Y. Dec. 2, 2013) (holding company had no duty to disclose information regarding customer contract dispute where customer did not "communicate[]" belief regarding breach until after Registration Statement became effective). Plaintiff fails to address *In re Express Scripts Holding Co. Sec. Litig.* (*see* Mot. at 17), which is directly on point and explains parties need not disclose "all disputes with a major customer." 2017 WL 3278930, at *13 (S.D.N.Y. Aug. 1, 2017). As in both *Hi-Crush* and *Express Scripts*, Plaintiff fails to allege *any* facts indicating Defendants were aware, or should have been aware, Amgen would terminate the Amgen Agreement. This Court should reach the same result.

## III.    DEFENDANTS' STATEMENTS ARE OPINIONS

Plaintiff contends that Statements 1-3 are not opinion statements, apparently construing them as "untrue statements of material fact" because of the "then-existing advancement of the Roche trials."[4] (Opp. at 14 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015), to argue "that a thing done or existing or an actual happening is fact, not opinion").) But nothing in Statements 1-3, all of which refer to Defendants' "belief" and "expectations," could reasonably be construed as an untrue statement of fact about the Amgen Agreement. And Plaintiff is, tellingly, unable to identify *any* "underlying fact" embedded in those Statements, arguing instead that they "convey facts about how the speaker has formed the

---

[4] As explained in the Motion, each of the three Roche trials at issue were in the early phases of the FDA approval process. (*See* Mot. at 6-7.) MP0310 was similarly in Phase 1 at the time of the IPO. In other words, each was still early in its clinical development at the time of the IPO, with commercialization and regulatory approval far from a sure thing—something Plaintiff himself acknowledges. (Opp. at 16 (arguing that competition presented the "***possibility*** that Roche's product ***could*** outcompete MP0310 ***if*** they were both commercialized and approved" (emphasis added))); *see also In re Omeprazole Patent Litig.*, 490 F. Supp. 2d 381, 510 (S.D.N.Y. 2007) ("Clinical trial testing is uncertain and many drugs and formulations fail, even after successful prior trials.").

4

opinion"—all without identifying any such fact. *Omnicare*, 575 U.S. at 185.

Regardless of which *Omnicare* theory Plaintiff is pursuing, it cannot support a claim: "Plaintiffs' case essentially boils down to an allegation that the statements were misleading for failure to include a fact that would have potentially undermined Defendants' [opinions]. But *Omnicare* imposes no such disclosure requirements on issuers." *Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016) (affirming dismissal of claims that Sanofi misled investors by omitting that the FDA had expressed concern about its clinical trials); *see also Finger v. Pearson PLC*, 2019 WL 10632904, at *10 (S.D.N.Y. Sept. 16, 2019) (dismissing securities claims where plaintiffs failed "to identify how these omissions made the opinion statements at issue misleading to a reasonable investor"). Each of Statements 1-3 are non-actionable opinions.

## IV.    DEFENDANTS' STATEMENTS ARE FORWARD-LOOKING STATEMENTS

Finally, Plaintiff argues the "risk" of competition from Roche "had already materialized" at the time of the IPO, rendering Defendants' risk disclosures false and Statements 2, 4, and 6 non-forward-looking statements. But Plaintiff does not dispute that Defendants **specifically** warned investors that "competition in the oncology space is intense," and that MP0310 would "compete with agents that are currently in development including monoclonal antibodies." (Mot. at 23.) The securities laws do not require any further detail. *See, e.g.*, *Steinberg*, 88 F. Supp. 2d at 304 (alleged omission not misleading where prospectus warned that Company "experiences intense competition" against "a large number of private and public companies"); *Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 794 (S.D.N.Y. 1997) (alleged omission not misleading where Prospectus warned that industry was "highly competitive"). Plaintiff cannot explain how Defendants' unequivocal language "did not expressly warn of or did not directly relate to the risk" that purportedly materialized, *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002), and Statements 2, 4 and 6 are therefore non-actionable forward-looking statements.

Dated:  October 5, 2023

Respectfully submitted,

COOLEY LLP

*/s/ Brian M. French*
Brian M. French
55 Hudson Yards
New York, NY  10001
Tel: (212) 479-6000
bfrench@cooley.com

Koji Fukumura (*pro hac vice*)
10265 Science Center Drive
San Diego, CA  92121
Tel: (858) 550-6000
kfukumura@cooley.com

Luke T. Cadigan (*pro hac vice*)
Elizabeth M. Wright (*pro hac vice*)
Zachary Sisko (*pro hac vice*)
500 Boylston Street, 14th Floor
Boston, MA  02116
Tel: (617) 937-23000
lcadigan@cooley.com
ewright@cooley.com
zsisko@cooley.com

*Attorneys for Defendants*